The Full Commission have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award of the deputy commissioner with the exception of the adding of what is now Number #3 in the Award. Therefore, the Full Commission ADOPTS and AFFIRMS the Opinion and Award of the deputy commissioner except as modified.
******************
The Full Commission finds as facts and concludes as matters of law the following, which were entered by the parties at hearing before the deputy commissioner as
STIPULATIONS
1. The parties entered into a Form 21 and three (3) Forms 26. Each of those agreements for compensation were approved by the Industrial Commission and are incorporated into the record of this case.
2. Stipulated Exhibit #2, rehabilitation records of Conservco, were received into evidence.
3. The parties stipulated to the introduction into evidence of the medical records of Dr. Ballard, Dr. Hutson, Dr. Rose, Dr. Koman, Dr. Rauck, Dr. Groner, and Dr. Bey.
***************
The Full Commission adopts the findings of fact of the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff worked on a production line in a candle factory. The plaintiff sustained a strain to her middle finger on her right hand on October 10, 1989 when she was removing candle molds from a cooler and subsequently developed tendinitis and filed a claim for workers' compensation benefits. The defendants accepted the plaintiff's claim and entered into an agreement for compensation, a Form 21 with respect to plaintiff's right hand injury. Subsequently, the defendants entered into supplemental agreements for compensation, compensating the plaintiff for various periods of temporary total disability and finally temporary partial disability.
2. The plaintiff was subsequently diagnosed with reflex sympathetic dystrophy by Dr. Rose on February 6, 1990. In February 1990 Dr. Rose determined that plaintiff had carpal tunnel syndrome for which he subsequently treated plaintiff and performed a surgical release of the carpal tunnel on the right hand on April 6, 1990. Thereafter, on May 1, 1990 Dr. Rose performed a surgical release on plaintiff's left wrist. The plaintiff continued to experience left wrist pain for which Dr. Rose treated her and on January 14, 1991 he performed a second surgery on the left wrist.
3. The defendants have apparently paid plaintiff's medical expenses for each of her surgeries. Plaintiff received disability compensation through August 5, 1992. There is no agreement for compensation as a result of the left hand carpal tunnel syndrome, but defendants have admitted liability.
4. The plaintiff obtained a new job with RHA Services as a counselor in a Willie M. home. Once plaintiff obtained this new employment, the defendants discontinued vocational counseling which had been provided to plaintiff. Plaintiff also had employment at the Old Beau Country Club where her husband was employed. Plaintiff argues by brief that she lost her job with RHA Services because she revealed at the hearing that she had not been truthful on her employment application with respect to her existing carpal tunnel syndrome. However, the evidentiary record does not contain evidence of this job termination and is, therefore, not addressed in this Opinion. Even if there was evidence concerning the job termination, plaintiff was not terminated for an inability to perform her job, but allegedly for giving inaccurate information on her employment application. The plaintiff performed both of these jobs without complaints about her carpal tunnel syndrome. The plaintiff soaked her hands in hot water and used the hot tub at the Old Beau Country Club where she was employed. The plaintiff did not return to her surgeon who performed surgery on both hands after May 1992.
5. At the time of the hearing the plaintiff was gainfully employed.
6. The plaintiff did not testify as to the alleged activity which may have caused her left arm carpal tunnel syndrome and there is no evidence from which it could be judicially determined that plaintiff's employment placed her at an increased risk for contracting an occupational disease (carpal tunnel syndrome) as compared to members of the public generally or that the carpal tunnel syndrome was due to circumstances and conditions peculiar to her employment; however, the defendants have admitted liability for bilateral carpal tunnel syndrome, so causation will not be addressed in this Opinion.
7. Dr. Rose rated plaintiff with a 10 percent permanent disability to the left hand and no disability on the right hand as of March 1991.
8. Plaintiff saw Dr. Koman in May 1991. Plaintiff treated with Dr. Koman until February 5, 1992 when he rated the plaintiff with a 12.5 percent permanent partial disability to both hands. (In his deposition testimony Dr. Koman did not causally relate the plaintiff's medical problems to her October 5, 1989 accident where she strained her middle finger on her right hand. However, as previously stated, causation is not at issue.) Dr. Koman referred plaintiff to Dr. Rauck at the Pain Control Center at The Bowman Gray School of Medicine. Dr. Rauck's impression was, "bilateral upper extremity pain s/p bilateral carpal tunnel repair probably secondary to reflex sympathetic dystrophy with possible myofascial component." Plaintiff continued to treat with Dr. Rauck and on March 30, 1992 Dr. Rauck noted in a letter to plaintiff's counsel that he rated plaintiff with a 10 percent disability of the right hand, a 15 percent disability of the left hand, and 5 percent disability to each arm secondary to reflex sympathetic dystrophy and her relative recalcitrant response to multiple treatment modalities. In a November 29, 1991 letter in the medical records Dr. Rauck rated plaintiff with 15 percent disability of the left upper extremity and 10 percent disability of the right upper extremity secondary to reflex sympathetic dystrophy. The March 30, 1992 letter to plaintiff's counsel was to clarify the November 29, 1991 record. In his deposition testimony on August 11, 1994, Dr. Rauck gave plaintiff a 15 percent rating of the right hand and 20 percent to the left hand. Dr. Rauck's disability ratings for the plaintiff have switched from the hand to the arm and back to the hand and have changed in percentage.
9. The plaintiff saw Dr. Groner, who referred her to Dr. Richard Bey. Dr. Bey noted on March 24 1993 that, "I cannot find a neurologic explanation for her chronic complaints." Dr. Bey deferred to Dr. Rauck's judgment in regard to "RSD".
10. Defendants argue by brief that the issue in this case is the amount of compensation that should be paid pursuant to G.S.97-31 for disability due to bilateral carpal tunnel syndrome. Plaintiff asserts that she is entitled to vocational training, temporary total disability compensation and payment for the permanent partial disability rating.
****************
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff, by admission of defendants, has bilateral carpal tunnel syndrome which has left plaintiff with a permanent partial disability. Having given equal weight to the opinions of plaintiff's three doctors who rated her, but having decided to discount the opinion of Dr. Rose who did not assign any disability to plaintiff's right hand, the undersigned concludes that plaintiff retains a 14 percent permanent partial disability to the left hand and a 13 percent permanent partial disability to the right hand for which she is entitled to fifty-four (54) weeks of compensation at the rate of $164.27 per week.
2. Plaintiff argues that she should be given vocational retraining. The undersigned are sympathetic of this argument, but note that plaintiff obtained employment on her own after her compensable injury/occupational disease and was able to perform gainful employment with her partial disability and under those circumstances defendants are not obligated to provide plaintiff with additional vocational assistance and are not obligated by the workers' compensation law to send plaintiff to school. Plaintiff's counsel consistently pursues this remedy for his clients and he is to be commended for doing so; however, the current law does not place such an obligation on employers.
3. Plaintiff is entitled to continuing medical compensation so long as the medical services rendered tend to give relief, effect a cure or lessen the period of disability.
******************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Subject to a counsel fee hereinafter approved, Defendants shall pay plaintiff fifty-four (54) weeks of compensation, a total of $8,870.58. All of said compensation having accrued, it shall be paid in a lump without commutation.
2. An attorney fee of 25 percent of the compensation awarded the plaintiff is hereby approved for plaintiff's counsel. Said attorney fee shall be deducted from the compensation payable to the plaintiff and paid directly to plaintiff's counsel.
3. Defendants shall pay all medical expenses incurred and to be incurred for so long as such medical services are reasonably required to give relief, or lessen the period of disability when bills for same are submitted to defendant and approved through procedures adopted by the Industrial Commission.
4. The defendants shall pay the costs due this Commission.
************
ORDER
In the discretion of the undersigned,
1. Plaintiff's Motion to Remand this case to a deputy commissioner for further hearing is DENIED.
2. Defendant's Motion for attorney fees is hereby DENIED.
 S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________________ COY M. VANCE COMMISSIONER
S/ _________________________ DIANNE C. SELLERS COMMISSIONER
BSB:be